UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

EVANSTON INSURANCE COMPANY                          PLAINTIFF

v.                                   No. 5:23-cv-160-BJB

SHADD BYASSEE, ET AL.                             DEFENDANTS

\*\*\*\*\*

## OPINION AND ORDER ABSTAINING AND DECLINING JURISDICTION

When the Byassee Paving Company demolished the vacant brick building next door, Clinton Hardware didn't expect damage to its own building would follow. But that's what happened when the neighbor's wall fell into the store—knocking down part of *that* building, damaging cars, and (allegedly) hurting two customers. Clinton Hardware *did* expect, however, that Byassee Paving's insurer would cover the resulting losses—especially after its insurance agent said as much.

But this mess hasn't been easy to tidy up: down the street from the hardware store in Hickman Circuit Court, Haley Miles and Robert Schwartz[1]—two patrons inside the store during the collapse—have sued Clinton Holdings (owner of Clinton Hardware), the Hickman Economic Development Authority, Shadd Byassee (owner of Byassee Paving), Fall & Fall Insurance (Byassee Paving's insurer) and Harrison Hawks (Byassee Paving's insurance agent).[2] Clinton Holdings has also sued Byassee, who in turn has sued Hawks and Fall & Fall. DNs 35-5, -6. The claims concern property damage, personal injury, misrepresentations about insurance coverage, negligence, and vicarious liability.

---

[1] The spelling of Schwartz's name remains a strange subject of disagreement. *See* Complaint (DN 1) ("Jason Schwartz"), Motion to Dismiss (DN 35) ("Robert Schwartz"), Response (DN 41) (same), Schwartz Amended State Complaint ("Robbert Jason Schwartz"). Similarly mysterious is the status of Ricky Bond, named as a necessary party in the federal suit—but not in a way that identifies his or her role.

[2] In the underlying state-court litigation, Miles and Schwartz sued Byassee *Paving*. In this federal lawsuit, however, *Shadd* Byassee—the paving company's owner—is named: Evanston sued "Shadd Byassee dba Byassee Paving." Complaint (DN 1) ¶ 4. At least for purposes of this order, no difference between Byassee's corporate and natural personages is apparent. So the Court will treat them as legally interchangeable.

Since 2023, that cast of characters has actively litigated these coverage and damages disputes in state court.[3] Those proceedings have progressed significantly—through case consolidation, depositions, additional deposition requests, and ongoing written and documentary discovery. *See* Hearing (DN 54); Joint Status Report (DN 53).

So why has the rubble spread from state court in Clinton to federal court in Paducah? Because Evanston—Byassee Paving's insurer, technically a non-party in state court, albeit with a direct stake in that litigation—filed this parallel federal suit. Rather than intervening in the active and overlapping litigation in Hickman County, Evanston decided to ask this court to limit its obligations in that one. Its request is twofold: (1) rescind the commercial general liability policy it issued Byassee Paving, and (2) declare that it has no duty to indemnify Byassee Paving for damages asserted in the consolidated state-court litigation. Complaint at 7. Like the underlying dispute, Evanston's complaint turns on the nature of the insurer-insured relationship: whether its policyholder, Byassee Paving, misrepresented its business operations in a manner that negates the policy. *Id.* at 6–7.

**A.    Abstention or Declaratory Discretion?**    Seeking to re-consolidate the by-now sprawling dispute and avoid duplicative proceedings, Federal Defendants Clinton Holdings and Federated Mutual (Clinton Holdings' insurer) moved to dismiss, urging the Court to "abstain from exercising subject matter jurisdiction and dismiss the Complaint … since the dispute at issue is best resolved in Kentucky state court in the underlying lawsuits." Motion to Dismiss at 1. The motion went on to apply the so-called *Grand Trunk* factors to support its request. *Id.* at 8–24 (citing *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). That line of authority addresses a federal district court's "unique and substantial discretion," conferred by Congress, to decline to issue a declaratory judgment. *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 29 F.4th 792, 796 (6th Cir. 2022) (discussing 22 U.S.C. § 2201(a) and going on to "consider the five *Grand Trunk* factors"). Evanston responded in like fashion, opposing dismissal based on the same set of considerations set forth in *Grand Trunk* and subsequent rulings.

Had Evanston sued only for a declaratory judgment, the discretionary question raised by the Defendants' motion would be an easy one: ground zero for this dispute is the Hickman Circuit Court, not federal district court. Under *Grand Trunk*, this follow-on lawsuit is a prime candidate for dismissal. It started in state court, has progressed further there, and issuance of a declaration here is just as likely to complicate as simplify the underlying litigation. This Court's decision, in other

---

[3] *See Schwartz v. Byassee Paving, et al.,* Hickman County Circuit Court, No. 23-CI-42; *Miles v. Clinton Holdings LLC, Byassee Paving, and Hickman County Economic Development Authority, Inc.,* Hickman County Circuit Court, No. 23-CI-38 (consolidated).

words, wouldn't sufficiently streamline any portion of the dispute to warrant parallel proceedings and their inherent risks of inefficiency and inconsistency.

But a declaratory-judgment claim isn't all that's at stake here. Indeed, it's not even *primarily* what's at stake. Evanston's principal claim seeks the equitable remedy of rescission, of which the declaratory-judgment claim (borrowing Evanston's language) is merely "derivative."[4] Declaring under Count Two that the policy doesn't bind Evanston, it concedes, only makes sense if the Court has already held for Evanston on Count One by rescinding the policy. So why would a court consider dismissing a non-declaratory claim under a statutory grant of authority specific to the Declaratory Judgment Act? If Evanston filed only a single state-law rescission claim, diversity jurisdiction would still exist and this Court would bear a "virtually unflagging obligation" to exercise the jurisdiction over it. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).[5] The *Colorado River* line of decisions explains that the judge-made doctrine of abstention is typically the only way for federal judges to unshoulder that burden—one which should not lightly be cast off. Abstention is rare, and for good reason: the Constitution and Title 28 of the U.S. Code create a right for citizens to seek relief from the federal judiciary if their suits fit the criteria for limited federal jurisdiction. *See Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) (Marshall, C.J.) (federal courts "have no more right to decline the exercise of jurisdiction, than to usurp that which is not given"). If the Federal Defendants are to slip loose from the rescission claim against them, then as a matter of doctrine it's difficult to imagine an escape other than abstention.

So why does their motion treat rescission and a declaratory judgment as one and the same? The *Grand Trunk* test obviously applies to standalone requests for declaratory judgments. And the considerations of efficiency, federalism, and equity that it calls judges to address obviously bear a strong family resemblance to the factors relevant under abstention doctrine—as the analyses below demonstrate. Rescission, moreover, is quite similar in its practical effect to the declaration Evanston requests. *See* EMILY SHERWIN & SAMUEL L. BRAY, AMES, CHAFFEE & RE ON REMEDIES 1071 (3d ed. 2020) ("Even so, the ultimate goal of some equity proceedings is a declaration of the plaintiff's rights vis-a-vis the defendant. Actions to rescind or reform a contract are examples."). Presumably that's at least partly why the parties' briefs refer interchangeably to abstention and dismissal. *See* Motion *for Abstention* at 8–24 (discussing *Grand Trunk* factors *under the Declaratory Judgment Act*)

---

[4] And the Plaintiff admitted as much during this Court's February 2025 hearing on this motion.

[5] *Colorado River* abstention, as set forth by the Supreme Court, authorizes federal courts to abstain from deciding a case in which substantially the same issues are the subject of parallel state proceedings. This rationale differs from other forms of abstention, like those that authorize federal courts to avoid, for example, opining on a sensitive area of state law or enjoining a criminal prosecution. *See generally* RICHARD H. FALLON JR. ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1094–1178 (7th ed. 2015).

(emphases added); Response (DN 41) at 6–17 (similar).  Another plausible reason: Existing caselaw suggests that treating a declaratory and non-declaratory claim as one and the same under the Declaratory Judgment Act makes a lot of practical sense. *See, e.g., General Star National Insurance Co. v. Flinchum*, No. 6:22-cv-189, 2023 WL 3956150, at *8–9 (E.D. Ky. June 12, 2023).  Whatever the reason, neither party has offered any distinction between *Colorado River* abstention and the *Grand Trunk* analysis—even after the Court invited *s*upplemental briefing (DN 49) on this point. *See* Joint Status Report (DN 53) at 2–3 (declining to distinguish the two).

But the jurisdictional and doctrinal considerations for dismissal of declaratory claims and abstention on non-declaratory claims are different in kind and degree. Even where abstention arguably applies, it isn't as freely available as dismissal of a declaratory-judgment claim.   As the Supreme Court has put it, the DJA's "textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286– 87 (1995) (citing David L. Shapiro, *Jurisdiction and Discretion*, 60 NYU L. REV. 543 (1985).  So conflating declaratory-judgment and abstention doctrines would both relieve federal courts of their jurisdictional duty to decide and also risk collapsing the doctrinal distinction between the two causes of action.   Because despite their seemingly common roots in equity, the two are not identical.

A declaratory-judgment action would (at most) interpret rather than rescind a contract.  A declaration merely states the legal rights and obligations of parties; it doesn't alter those rights.  *See United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986) (Friendly, J.) ("[T]he primary purpose of the DJA is to have a declaration of rights not already determined, not to determine whether rights already adjudicated were adjudicated properly.").  The court's order would be enforceable, if at all, only through a follow-on request for a different equitable remedy—an injunction.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950) (Frankfurter, J.) ("The Declaratory Judgment Act allow[s] relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked."); SHERWIN & BRAY, *supra*, at 1080 (Declaratory judgments "la[y] the foundation for further actions of damages or injunctive relief, if these remedies become necessary."); *see also* Samuel L. Bray, *The Myth of the Mild Declaratory Judgment*, 63 DUKE L.J. 1091, 1110 (2014) ("[A] plaintiff who receives a declaratory judgment can go back and receive an injunction if needed" because "[i]t is black-letter law that a declaratory judgment cannot be the basis for contempt proceedings.").  While a declaration could accompany a rescission (as Evanston seeks here), that judgment alone could not "undo" a contract. The issuing court isn't ordering any party to take action (e.g., make restitution payments).  *See* Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. REV. 530, 561–62 (2016).  "[T]he declaratory judgment lacks the distinctive characteristics of the equitable remedies" such as rescission.  *Id.* at 561.  "It is definitional that a declaratory judgment does not include a command to the parties,"

unlike rescission, which frequently commands the parties to take action to undo the contract. *Id*. at 562.

A rescission claim, by contrast, sounds in equity, not statute. It seeks coercive relief—the unwinding of an otherwise binding set of contractual obligations. Further, when a court orders the rescission of an insurance policy, it may also require a party to return premiums or take other equitable steps to return the parties to their pre-contract positions. "Rescission 'means undoing an exchange, with each side returning what it has received.'" *Id*. at 555 (quoting WARD FARNSWORTH, RESTITUTION: CIVIL LIABILITY FOR UNJUST ENRICHMENT 121 (2014)).

This contrast illustrates some (though certainly not all) of the ways in which Evanston's two claims are distinct. One is statutory and the other equitable. One is purely interpretive and the other coercive. Their historical origins differ as well. And unlike in other imaginable contexts, the claims don't sing in unison but instead in harmony. On Evanston's own telling, the rescission claim is primary and the Declaratory Judgment Act claim is derivative—entirely conditional, meaning it only has effect if rescission is granted. Without a holding that rescission is warranted, the declaration request would be moot. So at least in these circumstances resting dismissal on the Declaratory Judgment Act—rather than consideration of the rescission claim itself—would be dissonant at best and arguably unfaithful to the judicial duty to adjudicate disputes properly within the court's jurisdiction.

Nonetheless, some courts in this district have done just that. Those courts held that rescission claims—when coupled with claims for declaratory relief—fall within the scope of the Declaratory Judgment Act's authorization to decline jurisdiction. *See, e.g.*, *General Star*, 2023 WL 3956150, at *10; *Principal Life Ins. Co. v. Doctors Vision Center I*, No. 5:12-cv-125, 2013 WL 1625132, at *4 (W.D. Ky. Apr. 15, 2013). According to these courts, because rescission claims in many ways resemble declaratory judgment claims, the Declaratory Judgment Act (as glossed by *Grand Trunk*) is the appropriate vehicle to decline jurisdiction over both types of claims.

The problem with that approach is that it overlooks the important differences between declarations and other causes of action. The Declaratory Judgment Act is *sui generis* in the discretion it grants district courts to decline to hear cases otherwise within their subject matter jurisdiction. It is entirely "distinct from other areas of the law"—like abstention—"where concepts of discretion surface." *Wilton*, 515 U.S. at 286–87. The Act's authorization to decline jurisdiction is a deviation granted by Congress from the federal courts' otherwise "virtually unflagging obligation" to hear cases within their subject matter jurisdiction—an obligation likewise conferred by the Legislature. *Colorado River*, 424 U.S. at 817. Put differently, the default in the federal system is that the district courts heed Congress's command to hear cases within the jurisdiction it prescribes. Courts should thus be wary of shoehorning non-declaratory claims into the Act's context-specific exception to the norm.

5

True, the Sixth Circuit has suggested that when declaratory and equitable claims are "closely intertwined," district courts should consider whether the claims should, for efficiency reasons, rise and fall together. *See Adrian Energy Assocs. v. Mich. Public Service Commission*, 481 F.3d 414, 422–23 (6th Cir. 2007). But *Adrian* itself held that the better approach was to address that unit under *abstention* principles, not the Declaratory Judgment Act—an approach at least faithful to the principles described above. *Id.* In any event, neither *Adrian* nor the district courts taking a different approach explains why assessing each set of claims independently would be inappropriate—at least where, as here, the Court declines to exercise jurisdiction over both sets of claims.

No precedent or logic before the Court, therefore, suggests that a rescission claim that accompanies a request for a mirror-image declaration is subject to the laxer standards for discretionary dismissal under the Declaratory Judgment Act, rather than the stricter standards of abstention doctrine. The *Colorado River* variety of abstention offers a more precise route to dismissal of the rescission claim without glossing over the distinctions between the two claims. *See* Shapiro, 60 NYU L. Rev. at 548 n.24 (contrasting abstention under traditional principles of equity with abstention under the Declaratory Judgment Act). So the Court will look to the *Colorado River* abstention doctrine to decide the Federal Defendants' request to dismiss the rescission claim and the *Grand Trunk* factors to decide whether to decline jurisdiction under the Declaratory Judgment Act.

**B.    Rescission and Abstention.**  "[C]onsiderations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts," *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). This doctrine reflects due regard for federalism and distaste for inter-court conflict within our constitutional order. *See Guess v. City of Paducah*, 687 F. Supp. 3d 799, 804 (W.D. Ky. 2023) ("[T]he animating force of the Court's abstention cases is that they all implicate (in one way or another and to different degrees) underlying principles of equity, comity, and federalism foundational to our federal constitutional structure.") (quoting *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 525–26 (7th Cir. 2021)); *see also* Shapiro, 60 NYU L. Rev. at 580–85 (discussing the historical comity-based justifications for abstention).

Before deciding whether *Colorado River* abstention is appropriate, courts in the Sixth Circuit consider eight factors.[6] Here, the factors overwhelmingly counsel against federal intervention regarding the rescission claim.

---

[6] These eight *Colorado River* factors are: (1) whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal, (6) the adequacy of the state-court

The most compelling (and obvious) reason to abstain is the prospect of piecemeal litigation. When different courts adjudicate identical or related issues, they risk "duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341 (citation omitted). The Supreme Court has deemed this factor "paramount," particularly where different courts are asked to resolve the same factual and legal issues. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). Parallel or dueling litigation is at best inefficient and at worst corrosive to the search for objectivity and consistency fundamental to the rule of law.

Here, the same insurance policy and core allegations are at issue in both forums. And, as noted above, the state-court litigation has made much progress over the past 17 months. Evanston apparently had a choice whether to pursue its claim before a state judge already familiar with the dispute or a federal judge separated in time, space, and expertise from those ongoing proceedings. Flattering, perhaps, yet "[c]ourts typically defer to proceedings that are already underway, preferring not to begin anew in a second forum." *Nat'l Tr. Ins. Co. v. Heaven Hill Distilleries, Inc.*, No. 3:14-cv-394, 2015 WL 1931961, at *3 (W.D. Ky. Apr. 28, 2015) (citing *Romine*, 160 F.3d at 341–42). This federal lawsuit remains in its early stages, with discovery delayed by mutual agreement. Because the state cases were filed first, *see United Specialty Ins. Co. v. Seidenfaden's LLC*, No. 3:16-cv-190, 2016 WL 6078307, at *7 (W.D. Ky. Oct. 14, 2016), and have advanced further, *see Heaven Hill*, 2015 WL 1931961, at *3, dismissal of the rescission claim in favor of state court is the far more sensible option.

The state courts, moreover, are typically considered better suited to handle the state-law insurance claims arising under Kentucky law. *See* Complaint ¶¶ 30–31 (discussing applicable Kentucky law); Response at 14 (same). The state courts are fully capable of resolving these issues, and nothing in the record suggests that they aren't "adequate to protect the rights of the federal plaintiffs." *Kopacz v. Hopkinsville Surface & Storm Water Util.*, 714 F. Supp. 2d 682, 692 (W.D. Ky. 2010). Certainly Evanston hasn't offered any argument that the state court is incapable or ineligible to handle its claims just as well as (or better than) this Court. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 208 (6th Cir. 2001). Nor has Evanston identified any particularly federal interest that requires or even counsels in favor of resolution in this forum. *See Kopacz*, 714 F. Supp. 2d at 692. Neither courthouse nor forum appears meaningfully more convenient or proximate to the parties and witnesses, most of whom appear local to the Hickman Circuit Court. *See id.* at 690. The Sixth Circuit has declined to treat similar distances and differences—with both courthouses sitting comfortably within the Jackson Purchase—as weighing against

---

action to protect the federal plaintiff's rights, (7) the relative progress of the state and federal proceedings, and (8) the presence or absence of concurrent jurisdiction. *Romine,* 160 F.3d at 340–41 (citing *Colorado River*, 424 U.S. at 817).

abstention. *See id.* No tangible *res* or property is at issue, either. *Grand Trunk*, 746 F.2d at 326.

The balance of the *Colorado River* factors heavily supports abstention in favor of state court. Exercising jurisdiction in the face of parallel and ongoing state-court proceedings would be far less appropriate than would abstention. So the Court grants the Federal Defendants' request to abstain.

**C.    Declaration and Declining Jurisdiction.**  Evanston's claim for a declaratory judgment will likewise head to state court (should Evanston elect to re-file it). In *Grand Trunk*, the Sixth Circuit laid out five factors to consider when evaluating whether to exercise or decline jurisdiction under the Declaratory Judgment Act.[7] These factors—which address efficiency, fairness, federalism, and friction—strongly resemble those examined under the *Colorado River* abstention inquiry. Unsurprisingly, they similarly and strongly cut against the exercise of federal jurisdiction in parallel with the ongoing state-court proceedings.

The most compelling reason for abstention is the risk of "friction" between competing state and federal proceedings. *Id.*[8] The state court is already handling issues that also appear important to Evanston's federal claims—whether Byassee Paving was misled by its insurance agent, what information Byassee Paving disclosed to Evanston, and whose insurance coverage ultimately will cover the losses in and around the hardware store. And that court already *has* been addressing those issues since the first state case was filed in October 2023. A ruling from a federal court that took up the case deep into the state dispute could create conflicting and duplicative findings, disrupting the state court's ability to resolve the matter comprehensively and consistently. This is particularly true where a declaration is at stake in one case and broader relief at stake in the other: "the limited scope of declaratory relief is significant under the circumstances because it could create confusion about the resolution of the legal issues in the underlying state litigation." *Am. Nat'l Prop. &*

---

[7] The five *Grand Trunk* factors are: "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." 746 F.2d at 326.

[8] Courts examining the critical fourth *Grand Trunk* factor have identified three sub-factors: "(1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814–15 (6th Cir. 2004).

*Cas. Co. v. Wilson*, No. 18-cv-116, 2019 WL 1876797, at *5 (E.D. Ky. Apr. 26, 2019). The Sixth Circuit has consistently recognized that state courts are better suited to adjudicate insurance contract disputes due to their familiarity with state law and public policy. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814–15 (6th Cir. 2004); *Auto Owners Ins. Co. v. Trip Cat, LLC*, 444 F. Supp. 3d 764, 773 (E.D. Ky. 2020) (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)).

In addition, an "alternative remedy" apparently exists: intervention in the ongoing state-court proceedings. *Grand Trunk*, 746 F.2d at 326. This approach would appear to offer Evanston a full and effective forum for resolving its coverage obligations. And no one has suggested the state courts couldn't fully adjudicate the same questions Evanston raised here. A declaratory judgment (or even rescission) by this Court, moreover, would not "settle the controversy" in the underlying litigation. *Id.* While a declaration might clarify Evanston's obligations under the policy it issued, this Court's ruling would not resolve the broader liability and coverage disputes at issue in the state proceedings. *See U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 565 (6th Cir. 2006) (citing *Bituminous*, 373 F.3d at 814). "Although a declaratory judgment in this situation would clarify the legal relationship between the insurer and the insured, it would do nothing to clarify the relationship between the parties in the underlying state action." *Id.* (cleaned up). Based on the record and arguments before this court, the state judge appears far better positioned to globally resolve the most important issues, including potentially the same ones raised here.

All this points to this Court's limited ability to "serve a useful purpose." *Grand Trunk*, 746 F.2d at 326. At least not a purpose the state court wouldn't or isn't already fulfilling. *Id.* Instead of providing clarity, parallel proceedings guarantee inefficiency, risk inconsistency[9], and could create confusion in the underlying litigation. *See Wilson*, 2019 WL 1876797, at *5. The Sixth Circuit has cautioned against federal intervention in these circumstances, emphasizing that declaratory relief in federal court may not prove helpful when an "alternative," "more effective" remedy is already available in state court. *See Grand Trunk*, 746 F.2d at 326.

True, as the parties recognize and the Court agrees, the record (*see* Motion at 9–10) does not suggest "procedural fencing"—at least not strictly speaking. *Id.* at

---

[9] For example: the state court might find that Byassee Paving did, in fact, make material misrepresentations when applying for insurance—potentially letting Hawks and Fall & Fall off the hook. But this proceeding might conclude that it did not, keeping Evanston on the hook? The risk of inconsistent verdicts is particularly acute given the numerous and intertwined relationships between the various state and federal parties.

326.[10]  But that consideration is neutral at best.  No one raced to the courthouse; instead Evanston decided mid-litigation to strike out from the state courthouse for a new federal forum.  *See Cardinal Health*, 29 F.4th at 797 (recognizing that courts often deem this factor "neutral" when, as here, "there is no evidence of procedural fencing") (quotation marks omitted).

The balance of the *Grand Trunk* factors supports this Court's decision to decline jurisdiction under the Declaratory Judgment Act given the parallel state-court proceedings.

## ORDER

Not every dispute warrants a federal forum.  That much is clear from abstention and Declaratory Judgment doctrine alike.  And the applicability of those overlapping sets of considerations to this dispute is equally clear.  So the Court grants the motion of Federated Mutual Insurance Company and Clinton Holdings to dismiss this lawsuit without prejudice—partly on abstention grounds and partly under the Declaratory Judgment Act.  DN 35.  And because the Court grants the motion to dismiss, it denies as moot Byassee Paving's motion for leave to file a third-party complaint.  DN 40.

---

[10]  "Procedural fencing" refers to "a range of tactics that courts regard as unfair or unseemly, including selecting a forum to start a race for *res judicata*."  *Cardinal Health*, 29 F.4th at 797 (quotation marks omitted).